1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11 In re

12 Phillip Leslie Frazier and
   Jennifer Jo Frazier
13                                   No. 2:11-cv-00290-MCE
          Debtors/Appellees,
14
      v.                             MEMORANDUM AND ORDER
15
   Real Time Resolutions, Inc.,
16
          Creditor/Appellant.
17

18                   ----oo0oo----

19     Real Time Resolutions, Inc. ("Appellant"), appeals from the

20 Bankruptcy Court's order approving the removal of Appellant's

21 junior lien on debtors Phillip and Leslie Frazier's ("Appellees")

22 primary residence and confirming Appellees' Chapter 13 plan.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

The main issue presented by this appeal is one that has been addressed by multiple bankruptcy courts since the collapse of the housing market: whether a Chapter 13 debtor can "strip-off" a wholly unsecured secondary or junior lien on the debtor's principal residence when the debtor is ineligible for discharge because of a prior Chapter 7 discharge pursuant to 11 U.S.C. § 1328(f)(1).

The Bankruptcy Court's decision joins the growing split of authority among bankruptcy courts across the country on this same issue.  For the reasons set forth below, the Bankruptcy Court's decision is affirmed.[1]

**BACKGROUND**

On August 3, 2009, Appellees filed a voluntary Chapter 13 bankruptcy petition.  On August 17, 2009, Appellees' Chapter 13 petition was converted into a Chapter 7 case.  At that time, Appellees were not eligible to proceed under Chapter 13 because their scheduled, unsecured debts exceeded the debt limits imposed by 11 U.S.C. § 109(e).  Appellees indicated that there were two outstanding mortgage liens secured by their primary residence, located at 5610 Illinois Avenue, Fair Oaks, California, 95628 ("subject property").

///

///

---

[1] Because oral argument will not be of material assistance, the Court deemed this matter suitable for decision without oral argument.  See E.D. Cal. Local Rule 230(g).

1    Appellees received a Chapter 7 discharge on December 21,
2  2009, which relieved them of in personam liability for those
3  mortgage liens securing the subject property; however, the in rem
4  liability on the subject property remained intact.  Accordingly,
5  the senior and junior lien holders' state law lien rights in the
6  subject property "rode through" the Chapter 7 discharge and the
7  mortgage liens became non-recourse debts.

8    On December 30, 2009, Appellees filed a Chapter 13 petition
9  to address the outstanding liens secured by the subject property,
10  arrears, priority tax debt and other unsecured claims.  (Excerpt
11  of Record ("ER"), ECF No. 19 at 9.)  Courts colloquially refer to
12  this type of situation as a "Chapter 20" case.[2]

13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///

24

25    [2] The Supreme Court has expressly held that the Bankruptcy
   Code allows debtors to file Chapter 20 cases.  <u>Johnson v. Home</u>
26  <u>State Bank</u>, 501 U.S. 78, 87, 111 S. Ct. 2150 (holding a debtor
   could file a Chapter 13 after a Chapter 7 because the Bankruptcy
27  Code did not prohibit it and Congress specifically prohibited
   other types of consecutive filings, therefore its choice not to
28  prohibit it meant that this type of filing was allowed).

In Chapter 20 cases, the debtors file for Chapter 7 bankruptcy, receive a Chapter 7 discharge, and then file for Chapter 13 bankruptcy.[3]   Appellees admitted that one of the reasons they filed the second Chapter 13 petition was to stay a foreclosure action commenced by senior lien holder, Bank of America ("BOA"), against the subject property. (Id. at 110-11.)

Schedule D of Appellees' Chapter 13 plan lists BOA as the senior lien holder of the First Deed of Trust for the amount of $275,681.00, secured by the subject property.  (Id. at 33.) Schedule D also lists BOA as the junior lien holder of the Second Deed of Trust for $47,400.00, again secured by the subject property.  (Id.)

On January 6, 2010, Appellant filed a proof of claim for $53,591.82, representing the principal, interest, and late fees owed on the Second Deed of Trust ("junior lien") on the subject property.  (Id. at 61-63.)  Appellant identified itself as the loan servicer for BOA's junior lien on the subject property. (Id.)

---

[3] The Bankruptcy Court in this case aptly described the strategy behind "Chapter 20" filings:

> "[p]rior to the enactment of . . . [the Bankruptcy Abuse Prevention and Consumer Protection Act]. . . a Chapter 20 was a useful tool for a debtor who exceeded the monetary limits for a Chapter 13 case.  See 11 U.S.C. § 109(e). By filing the Chapter 7 case to discharge unsecured indebtedness, debtors could reduce their debts to be within the monetary limits for the filing a subsequent Chapter 13 case.  Then, through the subsequent Chapter 13 plan, debtors could save their residence from foreclosure by curing any arrearage through the plan or establish a court enforced repayment plan for nondischargeable debt, such as tax obligations."

In re Frazier, 448 B.R. 803, 807 (Bankr. E.D. Cal. 2011)

1    The Chapter 13 plan proposed to pay BOA, the senior lien

2    holder, as a class-one creditor holding a "secured claim"

3    pursuant to 11 U.S.C. § 506(a)(1).  (Id. at 115.)  Appellees'

4    plan proposed to treat Appellant as a class-two creditor holding

5    an "unsecured claim" and to avoid Appellant's junior lien on the

6    subject property on the theory that there was not equity to which

7    its lien could attach.  (Id. at 56.)

8        In order to remove Appellant's junior lien, Appellees filed

9    a Motion to Value Appellant's claim against the value of the

10   subject property pursuant to 11 U.S.C. § 506(a)(1).  Section

11   506(a)(1) classifies a creditor's allowed claim as a "secured

12   allowed claim" or "unsecured allowed claim."  See 11 U.S.C.

13   § 506(a)(1).  After a claim is classified by 506(a)(1), a debtor

14   can propose to modify the rights of certain holders of unsecured

15   allowed claims pursuant to 11 U.S.C. § 1322(b)(2).

16       In their Motion to Value, Appellees listed the value of the

17   subject property as $240,000.00.[4]  (Id. at 60.)  Appellant

18   objected to Appellees' Motion to Value and to the confirmation of

19   Appellees' Chapter 13 plan, arguing that Appellees could not

20   strip Appellant's junior lien because they were not eligible to

21   receive a Chapter 13 discharge pursuant to 11 U.S.C. § 1328(f)(1).[5]

22   (Id. at 64-68.)

23   _____

24       [4] No parties opposed Appellees' valuation of the subject
     property.

25       [5] Section 1328(f)(1) provides, in pertinent part, "the court
26   shall not grant a discharge of all debts provided for in the plan
     or disallowed under section 502, if the debtor has received a
27   discharge . . .(1) in a case filed under Chapter 7, 11, or 12 of
     this title during the 4-year period preceding the date of the
     order for relief under this Chapter. . . ."   11 U.S.C.
28   § 1328(f)(1).

Section 1328(f)(1) renders debtors who have received a Chapter 7
bankruptcy in the past four years ineligible to receive a Chapter
13 discharge.  Both Appellant and Appellees filed extensive
briefing with the Bankruptcy Court concerning Appellant's
objections.  (See id. at 88-129.)

The Bankruptcy Court overruled Appellant's objections and
confirmed Appellees' Chapter 13 Plan.  (Id. at 174, 194.)
The Bankruptcy Court found that BOA's senior lien securing an
obligation of $275,681.00 exhausted all of the value in the
subject property.  (Id. at 190.)  Accordingly, the Bankruptcy
Court determined that Appellant's junior lien was a wholly
unsecured allowed claim under § 506(a)(1), and the value of its
unsecured claims as $53,591.82.  (Id.)

The Bankruptcy Court also rejected Appellant's contention
that the amendment to 11 U.S.C. § 1325(a)(5) mandates discharge
to effectuate a lien strip, or instead, mandates payment of both
the secured and unsecured portions of its claim.  (Id. at
188-89.)  Relying on the Supreme Court's decision in Nobelman v.
American Savings Bank, 508 U.S. 324, 113 S. Ct. 2106, 124
L. Ed. 2d 228 (1993) and Zimmer v. PSB Lending Corp. (In re
Zimmer), 313 F.3d 1220 (9th Cir. 2002), the Bankruptcy Court held
that a creditor attempting to assert rights under 11 U.S.C.
§ 1325(a)(5) must be a holder of an allowed secured claim under
§ 506(a)(1).  (ER at 189.)  Since Appellant did not hold a
secured claim under § 506(a)(1), it did not have a basis for
asserting rights under § 1325(a)(5).  (Id.)

The Bankruptcy Court rejected Appellant's argument that a
lien may only be stripped upon discharge.  (Id. at 187.)

6

In an effort to explain how the case would end in light of the
lack of discharge in Appellees' Chapter 20 case, the Bankruptcy
Court likened Appellees' Chapter 13 plan to a contract between
Appellees and the creditors.  (Id. at 187.)  Specifically, the
Bankruptcy Court stated, "[i]t is the Chapter 13 plan, by which
the debtor commits him or herself to a plan, which becomes the
new contract between debtors and creditors."  (Id. [citing In re
Than, 215 B.R. 430 (9th Cir. B.A.P. 1997)]).  The Bankruptcy
Court explained that the debtor must pay the full amount of the
§ 506(a) secured claim held by BOA through the Chapter 13 plan,
resulting in there being no outstanding obligation secured by the
lien.  (Id.)  Then, upon completion of the plan, the debtor
demands reconveyance of the deed of trust or release of the lien
. . . .," from BOA as senior lien holder and Appellant, as junior
lien holder.  (Id.)  As to the close of the case, the Bankruptcy
Court noted, "[i]t is completion of the plan and performance
under the new contract created under the Bankruptcy Code which
results in the debtors having the right to demand and receive the
release of the lien.  The granting or denying of discharge does
not alter or remove the lien, and it not . . . [a] basis for the
court to denying [sic] a motion to value a creditor's secured
claim."  (Id.)

Finally, the Bankruptcy Court, on several grounds, overruled
Appellant's objection that Appellees' Chapter 13 plan was not
filed in good faith.  First, the Bankruptcy Court overruled
Appellant's objections based on § 1325(a)(5), as discussed above.
///
///

7

1  (Id. at 190.)   Second, the court overruled Appellant's objection

2  to Appellees' projected monthly personal and business expenses

3  outlined in the Chapter 13 plan.  (Id. at 191.)   Third, the

4  Bankruptcy Court overruled Appellant's objections that because

5  Appellees' Chapter 13 plan was filed on the heels of their

6  previous Chapter 7 discharge, Appellees' Chapter 13 was filed in

7  bad faith.  (Id. at 194.)   To this end, the Bankruptcy Court

8  addressed the purpose of Appellees' Chapter 13 plan and conducted

9  a good faith analysis of the Chapter 13 plan.  (Id. at 192-93.)

10  In conclusion, the Bankruptcy Court found that Appellees' Chapter

11  13 plan had been proposed in good faith and was not forbidden by

12  any law.  (Id. at 194.)   Importantly, the Bankruptcy Court also

13  found that Appellees' Chapter 13 plan complies "with the

14  provisions of 11 U.S.C. § 1322 for the contents of the plan and

15  11 U.S.C. § 1325(a) and (b) for confirmation of the plan proposed

16  in this case."   Id.

17      On January 25, 2011, Appellant filed the Notice of Appeal

18  with the U.S. Bankruptcy Appellate Panel of the Ninth Circuit.

19  (Id. at 196-197.)   On January 31, 2011, Appellees transferred the

20  appeal to this Court pursuant to 28 U.S.C. § 158.  (Id. at 198.)

21

22                              **STANDARD**

23

24      An appellant may petition the district court for review of a

25  bankruptcy court's decision.  Fed. R. Bankr. P. 8013.  The

26  applicable standard of review is identical to that employed by

27  circuit courts of appeal in reviewing district court decisions.

28  ///

1  See Heritage Ford v. Baroff (In re Baroff), 105 F.3d 439, 441
2  (9th Cir. 1997).  Thus, legal conclusions are renewed on a
3  de novo basis, and factual determinations are assessed pursuant
4  to a "clearly erroneous" standard.  Murray v. Bammer (In re
5  Bammer), 131 F.3d 788, 792 (9th Cir. 1997) (en banc).

6      Findings of fact are "clearly erroneous" only if the
7  reviewing fact is "left with the definite and firm conviction
8  that a mistake has been committed."  In re Marquam Inv. Corp.,
9  942 F.2d 1462, 1466 (9th Cir. 1991) (quoting United States v.
10 United States Gypsum Co., 333 U.S. 364, 395 (1948)).  Appellant
11 has the burden of proving such error has been committed, and the
12 reviewing court should not reverse simply because another
13 decision could have been reached.  In re Windsor Indus., Inc.,
14 459 F. Supp. 270, 275 (N.D. Tex. 1978).

15

16                          **ANALYSIS**

17

18      Real Time's appeal rests on two arguments: 1) the Bankruptcy
19 Court erred in determining that Appellees could remove
20 Appellant's lien without obtaining a Chapter 13 discharge, and
21 (2) the Bankruptcy Court erred in entering an order confirming
22 Appellees' Chapter 13 Plan when Appellant's claim was not treated
23 in the proposed Chapter 13 Plan.  (Appellant's Opening Brief, ECF
24 No. 17 at 8-9.)
25 ///
26 ///
27 ///
28 ///

## A.   Removal of Lien Without a Chapter 13 Discharge

The central issue on appeal presents a question of law addressed by conflicting court decisions concerning the interplay between various provisions of the Bankruptcy Code affecting "Chapter 20" bankruptcy cases, including provisions modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Put simply, the issue presented by cases of this nature is whether a Chapter 20 debtor may strip a wholly unsecured, inferior mortgage lien off the debtor's primary residence in a Chapter 13 case filed less than four years after having received a Chapter 7 discharge.  More specifically, the issue is whether a debtor, who has been discharged of in personam liability for a home mortgage debt by receiving a Chapter 7 discharge, may then modify the in rem rights of the holder of the mortgage debt by removing the lien through a Chapter 13 plan even though the debtors are ineligible for discharge, and if so, under what circumstances.

Accordingly, there is a growing split of authority among courts across the country regarding the permissibility and permanence of Chapter 20 lien stripping.  This issue is a divisive one in many jurisdictions, including California.

///

///

///

///

///

10

1  Compare In re Hill, 440 B.R. 176 (Bankr. S.D. Cal. 2010) and

2  In re Tran, 431 B.R. 230 (Bankr. N.D. Cal. 2010) (both finding

3  that Chapter 20 lien stripping is permissible and permanent upon

4  plan completion and a finding of good faith) with In re Victorio,

5  454 B.R. 759, 2011 WL 2746054 (Bankr. S.D. Cal. July 8, 2011) and

6  In re Winitzky, 2009 Bankr. LEXIS 2430 (Bankr. C.D. Cal. May 7,

7  2009) (both finding that Chapter 20 lien stripping is

8  impermissible in absence of discharge).  The split of authority

9  can be grouped into three approaches.  See In re Jennings,

10 454 B.R. 252, 256-57 (Bankr. N.D. Ga. 2011) (explaining the three

11 approaches).

12     Courts adopting the first approach "allow Chapter 20 lien

13 stripping because nothing in the Bankruptcy Code prevents it."[6]

14 Id.  These courts contend that the mechanism that voids the lien

15 is plan completion, and that Chapter 20 cases end in

16 administrative closing—not discharge.  Id.

17 ///

18 ///

19 ///

20 ///

21 ///

22

23     [6] See In re Hill, 440 B.R. 176; In re Tran, 431 B.R. 230
24 (Bankr. N.D. Cal. 2010); In re Okosisi, 451 B.R. 90 (Bankr. D.
   Nev. 2011); In re Fisette, 455 B.R. 177 (B.A.P. 8th Cir. 2011);
25 In re Scotto-Diclemente, 2011 WL 5835653 (Bankr. D.N.J.  Nov. 18,
   2011); In re Miller, 2011 WL 6257450 (Bankr. E.D.N.Y. Dec. 15,
26 2011); In re Gloster, 459 B.R. 200 (Bankr. D.N.J. 2011); In re
   Sadowski, 2011 WL 4572005 (Bankr. D. Conn. Sept. 30, 2011); In re
27 Jennings, 454 B.R. 252 (Bankr. N.D. Ga. 2011); In re Fair,
   450 B.R. 853 (E.D. Wis. 2011); In re Waterman, 447 B.R. 324
28 (Bankr. D. Colo. 2011); In re Davis, 2011 WL 1237638
   (Bankr. D. Md. Mar. 30, 2011).

Courts that adopt the second approach allow Chapter 20 lien stripping; however, after plan consummation, without a discharge, the parties' pre-bankruptcy rights are reinstated.[7] <u>Id.</u>  These courts assert that a Chapter 13 discharge is required to void the lien, and that Chapter 20 plans end in dismissal because they are ineligible for discharge.  <u>Id.</u>

Courts utilizing the third approach "hold that Chapter 20 lien stripping is impermissible because it amounts to a de facto discharge," which is prohibited by 11 U.S.C. § 1328(f)(1).[8]  <u>Id.</u> These courts rely on an interpretation of the Supreme Court case <u>Dewsnup v. Timm</u>, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992), and Congress' inclusion of a discharge requirement in 11 U.S.C. § 1325(a)(5).

///

---

[7] <u>See</u> <u>In re Casey</u>, 428 B.R. 519 (Bankr. S.D. Cal. 2010); <u>In re Trujillo</u>, 2010 WL 4669095 (Bankr. M.D. Fla. Nov. 10, 2010); <u>In re Colbourne</u>, 2010 WL 4485508 (Bankr. M.D. Fla. Nov. 8, 2010); <u>Hart v. San Diego Credit Union</u>, 449 B.R. 783 (Bankr. S.D. Cal. 2010); <u>In re Jazo</u>, 2010 WL 3947303 (S.D. Cal. Sept. 28, 2010); <u>In re Davis</u>, 447 B.R. 738 (Bankr. D. Md. 2011).

[8] <u>See</u> <u>In re Victorio</u>, 454 B.R. 759, 2011 WL 2746054 (Bankr. S.D. Cal. July 8, 2011); <u>In re Winitzky</u>, 2009 Bankr. LEXIS 2430 (Bankr. C.D. Cal. May 7, 2009); <u>In re Geradin</u>, 447 B.R. 342 (Bankr. S.D. Fla. 2011) (holding that Chapter 20 debtor could not avoid lien because of ineligibility for discharge); <u>In re Fenn</u>, 428 B.R. 494 (Bankr. N.D. Ill. 2010) (holding that by virtue of Section 1325(a)(5) holder of secured claim retains the lien until the underlying debt is paid in full or discharged);  <u>In re Orkwis</u>, 457 B.R. 243 (E.D.N.Y. 2011); <u>In re Jarvis</u>, 390 B.R. 600 (Bankr. C.D. Ill. 2008) (finding discharge a necessary prerequisite to permanency of lien avoidance); <u>In re Lilly</u>, 378 B.R. 232, 236-37 (Bankr. C.D. Ill. 2007) (holding that by virtue of Section 1325(a)(5) holder  of secured claim retains the lien until the underlying debt is paid in full); <u>In re Lindskog</u>, 451 B.R. 863 (Bankr. E.D. Wis. 2011); <u>In re Erdmann</u>, 446 B.R. 861 (Bankr. N.D. Ill. 2011); <u>In re Mendoza</u>, 2010 WL 736834 (Bankr. D. Colo. Jan. 21, 2010); <u>In re Blosser</u>, 2009 WL 1064455 (Bankr. E.D. Wis. Apr. 15, 2009).

For the reasons that follow, the Court agrees with those courts adopting the first approach, which hold that a wholly unsecured junior lien on the debtor's principal residence may be removed in Chapter 20 action despite the operation of § 1328(f)(1).  Therefore, the Court affirms the Bankruptcy Court's decision.

The determination of whether Appellees' Chapter 13 plan may remove Appellant's junior lien necessitates analysis of the interplay between §§ 506(a)(1), 1322(b)(2) and 1328(f)(1) of the Bankruptcy Code.  Thus, the Court's analysis beings with a discussion of those provisions of the Bankruptcy Code.

### 1. Secured and Unsecured Claims Under 11 U.S.C. § 506(a)(1)

Whether Appellees' Chapter 13 plan may remove Appellant's lien dependent on its § 506(a)(1) classification.  Section 506(a)(1) classifies the holder of an allowed claim as a holder of an "allowed <u>secured</u> claim" or an "allowed <u>unsecured</u> claim." 11 U.S.C. § 506(a)(1) (emphasis added).  Classification as the latter renders stripping of the lien impermissible.  The 506(a)(1) classification is based on the value of the underlying collateral:

> "An allowed claim of a creditor secured by a lien on property . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."

///

///

13

1  <u>Id.</u>  Section 506(a) also bifurcates an *undersecured* creditor's

2  claim into two parts: a secured claim to the extent of the value

3  of the collateral and an unsecured claim for the balance of the

4  claim.  <u>In re Fair</u>, 450 B.R. 853, 855 (E.D. Wis. 2011)(emphasis

5  added).

6      Holding an allowed secured claim under the Bankruptcy Code

7  is not necessarily synonymous with holding a security interest

8  outside of bankruptcy.  <u>See</u> <u>In re Zimmer</u>, 313 F.3d at 1223.

9  "Secured claim" is a term of art within the Bankruptcy Code and

10 means something different than it does for a creditor to have a

11 security interest or lien outside of bankruptcy.  <u>Id.</u>; <u>In re</u>

12 <u>Okosisi</u>, 451 B.R. 90, 93 (Bankr. D. Nev. 2011).  Outside of

13 bankruptcy, if a creditor has a valid security interest,

14 regardless of the collateral's value, it may be thought of as a

15 secured creditor.  <u>Id.</u>  Conversely, in bankruptcy, a creditor is

16 only a secured creditor if its claim is classified under

17 § 506(a)(1).  <u>Id.</u>  If the claim is not a "allowed secured claim,"

18 the once-secured creditor will have an unsecured claim for

19 purposes of the bankruptcy proceedings.  <u>Id.</u>  This leads to the

20 counterintuitive possibility that in bankruptcy, a creditor

21 holding a wholly unsecured allowed claim is classified as a

22 holder of an "allowed unsecured claim" in the Chapter 13 plan,

23 but also has "rights" of a secured creditor outside of

24 bankruptcy.  <u>Id.</u>

25     In this case, BOA's senior lien for $275,681.00 exhausted

26 all the $240,000.00 of value in the subject property.

27 ///

28 ///

14

1  Thus, there is zero value in the subject property for Appellant's
2  junior lien to attach, rendering Appellant's claim a wholly
3  unsecured allowed claim pursuant to § 506(a)(1).

4

5          **2.   Lien Stripping and Chapter 13**

6

7          The status of Appellant's unsecured allowed claim dictates
8  whether or not Appellees' Chapter 13 plan can remove Appellant's
9  junior lien.  Section 1322(b)(2) of the Bankruptcy Code allows
10 Chapter 13 debtors to modify the rights of creditors holding both
11 secured and unsecured claims.  See 11 U.S.C. § 1322 (directing
12 that a Chapter 13 plan may "modify the rights of holders of
13 secured claims . . . or of holders of unsecured claims).
14 Thus, in limited scenarios, § 1322 can be used to effectuate a
15 lien strip of both unsecured and secured claims in a Chapter 13
16 plan.  Id.

17         Congress has placed certain restrictions on the ability of
18 consumer debtors to impact the rights of holders of mortgage
19 liens under § 1322(b)(2), which prohibits a Chapter 13 debtor
20 from modifying the rights of a holder of a secured mortgage debt
21 if the mortgage debt is secured by a lien against the debtor's
22 principle residence.  See In re Miller, 462 B.R. 421, 426 (Bankr.
23 E.D.N.Y. 2011).  This prohibition has come to be known as the
24 "antimodification provision," and has given rise to substantial
25 litigation over the extent to which § 1322(b)(2) applies.  Id.
26 ///
27 ///
28 ///

                                    15

1    In Nobelman v. American Savings Bank, the Supreme Court

2  addressed the issue of "whether § 1322(b)(2) prohibits a

3  [C]hapter 13 debtor from relying on § 506(a) to reduce an

4  undersecured homestead mortgage to fair market value of the

5  mortgage residence."   508 U.S. at 325-26 (emphasis added).

6  There, the debtors——the Nobelmans——executed an adjustable rate

7  note for $68,250.00 to purchase their primary residence.   Id. at

8  326.   The note was secured by a deed of trust.   Id.   The

9  Nobelmans filed Chapter 13 after falling behind on mortgage

10  payments.   Id.   The bank holding the deed of trust filed a proof

11  of claim for $71,335.00 in principal, interest, and fees owed on

12  the note.   Id.   The Nobelmans' Chapter 13 plan valued their

13  primary residence at a mere $23,500 and proposed to bifurcate the

14  bank's claim into two parts, pursuant to § 506(a)(1): a secured

15  claim for $23,500.00 and an unsecured claim for the remaining

16  amount on the note.   Id.   In other words, the debtors proposed to

17  "strip-down" the bank's undersecured claim to the fair market

18  value of the home——$23,500.   Id.   Accordingly, the Nobelmans

19  proposed to only pay the bank $23,500 and remove the residual,

20  unsecured portion of the lien.   Id.

21    After reviewing the statutory language and applicable case

22  law, the Court held that a Chapter 13 debtor cannot strip-down a

23  partially unsecured residential mortgage lien secured by the

24  debtor's principal residence.   Id. at 332.   The Supreme Court

25  confirmed that the appropriate starting point to determine

26  whether a lien strip-down or strip-off is appropriate is through

27  application of § 506(a)(1).

28  ///

16

Id. at 328 (finding specifically that "[p]etitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.")(internal citations omitted).  The Supreme Court read the language "a claim secured only by a security interest in real property" to refer "to the lienholder's entire claim, including both the secured and unsecured components of the claim."  Id. at 331 (interpreting § 1322(b)(2) to prohibit a residential mortgage lien from being stripped down to the value of the collateral).  The Court held that as long as there is some value in the collateral to which the lien could attach, the entire lien was protected under § 1322(b)(2).

In 1997, the Ninth Circuit Bankruptcy Appellate Panel addressed a corollary question not at issue in Nobelman: whether the holder of a mortgage against a Chapter 13 debtor's residence which is wholly unsecured is entitled to the protections of the antimodification provisions of § 1322(b)(2), or whether the rights of such a mortgage holder can be modified by treating the claim as an unsecured claim in the debtor's plan.  In re Lam, 211 B.R. 36, 40 (B.A.P. 9th Cir. 1997).  In Lam, the undisputed value of the Chapter 13 debtors' primary residence was $300,000.00.  Id. at 38.  The residence was encumbered by four mortgage liens totaling $803,239.00.  Id.  The debtors' Chapter 13 plan proposed to strip-off the fourth deed of trust for $17,193.00 on the theory that the lien was a wholly underwater, unsecured claim under § 506(a)(1).  Id.

///

///

1    The Lam panel held the antimodification provision protecting a

2    loan secured by an interest in a debtor's principal residence, as

3    set out in § 1322(b)(2), does not apply if there is no value to

4    which the security interest could attach because the principal

5    residence was already fully subsumed by the security interest of

6    the senior lien holder.  Id. at 40.  In 2002, the Ninth Circuit

7    followed Lam in In re Zimmer, 313 F.3d 1220.  The Zimmer court

8    held that the antimodification protection of §1322(b)(2) only

9    operates to benefit creditors who may be classified as allowed

10   secured claim holders after operation of § 506(a)(1).  Id. at

11   1226.

12        Thus, In re Lam and In re Zimmer instruct that the

13   antimodification provision does not protect a creditor whose

14   junior lien on a debtor's primary residence has been classified

15   as an "unsecured claim" by § 506(a)(1).  This logic is "compelled

16   by the Supreme Court's decision in Nobelman," and has been

17   embraced by all six circuit courts that have considered the

18   question.  See In re Okosisi, 451 B.R. at 94 (citing In re

19   Zimmer, 313 F.3d at 1227).[9]

20   ///

21   ///

22   ///

23

24       [9] See In re Lane, 280 F.3d 663, 667-69 (6th Cir. 2002);

25   Pond v. Farm Specialist Realty (In re Pond), 252 F.3d 122, 126
     (2d Cir. 2001); In re Tanner, 217 F.3d 1357, 1359-60 (11th Cir.
26   2000); In re Bartee, 212 F.3d 277, 288, 295 (5th Cir. 2000);
     In re McDonald, 205 F.3d 606, 611 (3d Cir. 2000).  Bankruptcy
27   Appellate Panels have also reached this same result.  See
     In re Griffey, 335 B.R. 166, 167-68 (10th Cir. B.A.P. 2005); See
28   In re Mann, 249 B.R. 831, 836 (1st Cir. B.A.P. 2000)).

18

1    Other courts addressing whether lien stripping is allowed in

2   a Chapter 13 case also have considered 11 U.S.C. § 506(d) as a

3   lien stripping mechanism; however, reliance on § 506(d) is

4   misplaced.  Section 506(d) provides that "[t]o the extent that a

5   lien secured a claim against a debtor that is not an allowed

6   secured claim, such a lien is void."  11 U.S.C. § 506(d).  "In

7   Dewsnup v. Timm, 502 U.S. 410, 417 (1992), the Supreme Court held

8   that Section 506(d) only avoids a lien to the extent that the

9   underlying claim was disallowed pursuant to 11 U.S.C. § 502."

10  In re Fair, 450 B.R. at 856.  Thus, Dewsnup prohibited lien

11  stripping of Chapter 7 allowed claims.  In light of Dewsnup,

12  Section 506(d) is not the proper tool for lien stripping of

13  allowed claims in Chapter 13.  Id. (citing In re Hill, 440 B.R.

14  at 181; In re Fenn, 428 B.R. at 500; In re Geradin, 447 B.R. at

15  346)).  Regardless of 506(d)'s inapplicability, lien stripping is

16  expressly and broadly permitted in the context of rehabilitative

17  bankruptcy proceedings under Chapters 11, 12 and 13.  Id. (citing

18  In re Bartee, 212 F.3d 277, 291 n.1 (5th Cir. 2000)).

19    Accordingly, § 1322(b)(2) authorizes the removal of

20  Appellant's wholly unsecured junior lien on the subject property

21  in Appellees' Chapter 13 plan.  Appellant's claim was classified

22  as an unsecured allowed claim after operation of § 506(a)(1),

23  thus, it does not qualify for the antimodification protection of

24  § 1322(b)(2).

25  ///

26  ///

27  ///

28  ///

19

### 3.    2005 BAPCPA Amendments to the Bankruptcy Code

The prior discussion brings us to § 1328(f)(1), the crucial issue presented by this appeal.[10]  Appellants argue the Bankruptcy Court erred in confirming Appellees' Chapter 13 plan's removal of Appellant's junior lien because Appellees received a prior Chapter 7 discharge, and thus, they are ineligible to receive a Chapter 13 discharge.  (See generally Appellant's Opening Brief, ECF No. 17 at 12, 14-15, 18-22.)  As such, Appellants contend Appellees' Chapter 13 plan cannot remove their junior lien from the subject property because in the context of a Chapter 13 plan, discharge is required to effectuate a lien strip.

The 2005 amendments to the Bankruptcy Code affected changes to § 1328(f)(1) that has now caused courts to question whether the removal of an valueless junior lien in a Chapter 20 case remains possible.  See In re Gloster, 2011 WL 5114833, at *9-10 (Bankr. D.N.J. Oct. 13, 2011).  As previously noted, § 1328(f)(1) prohibits a Chapter 13 discharge if the debtor received a discharge in a Chapter 7, 11 or 12 cases in the four years preceding the date of the order for relief in the Chapter 13 case.  See 11 U.S.C. § 1328(f)(1).

---

[10] During the bankruptcy proceedings, Appellants argued that Appellees' Chapter 13 plan could not remove Appellant's junior lien because under 11 U.S.C. § 1325(a)(5), discharge is required to effectuate a lien-strip.  Appellant has not raised this argument on appeal.  In any event, the Court agrees with the Bankruptcy Court's decision finding § 1325(a)(5) is inapplicable to Appellant's allowed unsecured claim.  Section 1325(a)(5) has no applicability to unsecured allowed claims, which are separately governed by the confirmation requirements of § 1325(a)(4).

This change allows debtors the benefit of a Chapter 13 automatic stay and a chance to work out a repayment plan with creditors but denies them the benefit of a Chapter 13 discharge.

Still, even with the inclusion of 11 U.S.C. §1328(f)(1) with the BAPCPA, Congress was deliberate in only prohibiting discharge in a Chapter 20 case.  The Bankruptcy Code does not specifically prohibit stripping off unsecured mortgage liens for a debtor who is ineligible to receive a discharge, even though such language could easily have been added.  See In re Gloster, 2011 WL 5114833, at *4 ("Given the wide-ranging changes effected by BAPCPA, and its emphasis on ensuring that abusive use of bankruptcy protections not be permitted, it is significant that no changes were made to the Bankruptcy Code to disallow the strip-off of liens in Chapter 20 cases.").  As noted by the court in In re Jennings, "nothing in sections 506, 1322, 1325, 1327, or any other section of the Bankruptcy Code limits a Chapter 20 debtor's ability to take advantage of the protections Chapter 13 provides.  Lien-stripping is one of the tools in the Chapter 13 toolbox.  And use of the Chapter 13 lien stripping tool is not conditioned on discharge eligibility."  454 B.R. at 258 (citing In re Hill, 440 B.R. at 182; In re Tran, 431 B.R. at 235).

Further, the court in In re Hill argued that "to judicially impose a discharge requirement on the debtor's ability to strip a lien when none is required by statute cannot be reconciled with the Supreme Court's holding in Johnson v. Home State Bank, 501 U.S. 78, 87."  440 B.R. at 181-82.

///

///

1   Specifically, "[i]n <u>Johnson</u>, the Court held 'Congress did not

2   intend to categorically foreclose the benefit of Chapter 13 lien

3   reorganization to a debtor who previously filed for Chapter 7

4   relief.'"   <u>Id.</u> (internal citations omitted).   "By its plain

5   terms, § 1328(f) does not require another discharge when a later

6   case is filed; it simply denies an untimely discharge in a later

7   case."   <u>Id.</u> (citing <u>United States v. Ron Pair Enterprises, Inc.</u>,

8   489 U.S. 235, 240-41 (1989); <u>In re Silverman</u>, 616 F.3d 1001, 1006

9   (9th Cir. 2010) (explaining that statutory plain language must be

10  respected)).

11      Put more simply, "denying certain [C]hapter 13 debtors the

12  right to a discharge did nothing to change the fact that lien

13  stripping is generally allowed under Chapter 13."   <u>In re Fair</u>,

14  450 B.R. at 857.   In many Chapter 13 cases, "it is the ability to

15  reorganize one's financial life and pay off debts, not the

16  ability to receive a discharge, that is the debtor's holy grail."

17  <u>Id.</u> (citing <u>In re Bateman</u>, 515 F.3d 272, 283 (4th Cir. 2008)).

18  Accordingly, Congress did not intend to prevent lien stripping

19  through 1328(f)(1) and no discharge is required to effectuate a

20  strip of a junior lien of a debtor's primary residence.

21      Applied here, § 1328(f)(1) does not affect Appellees'

22  ability to strip Appellant's wholly junior lien in their Chapter

23  13 plan because nothing in the Bankruptcy Code prevents Chapter

24  20 debtors from stripping junior liens off their primary

25  residence pursuant to §§ 506(a)(1) and 1322(b)(2).   Section

26  1328(f)(1) only prohibits discharge, not lien stripping.

27  ///

28  ///

22

1    Instead of discharge, the Court agrees with the underlying

2  Bankruptcy Court and finds plan completion is the appropriate end

3  to Appellees' Chapter 20 case.  The lien strip will become

4  permanent not upon a discharge, as would happen in a typical

5  Chapter 13 case, but upon completion of all payments as required

6  by the plan.  See In re Blenheim, 2011 WL 6779709 (Bankr. W.D.

7  Wash. Dec. 27, 2011).  The reasoning set forth in In re Tran,

8  (Bankr. N.D. Cal. 2010), is persuasive:

9        [T]he Bankruptcy Code does not condition a chapter 13
         debtor's right to strip off a wholly unsecured junior
10       lien on the debtor's eligibility for a discharge.
         Rather, such right is conditioned on the debtor's
11       obtaining confirmation of, and performing under, a
         chapter 13 plan that meets all of the statutory
12       requirements.

13  431 B.R. at 235; accord In re Hill, 440 B.R. 176, 182 (Bankr.

14  S.D. Cal. 2010) ("[L]ien strips are permitted in Chapter 20 cases

15  even without a discharge."); In re Okosisi, 451 B.R. at 100

16  ("[C]hapter 20 bankruptcy is permissible under the Code, and

17  [debtors] may take advantage of all available chapter 13

18  restructuring tools," including lien stripping.); In re Fisette,

19  455 B.R. 177, 185 (8th Cir. B.A.P. 2011) ("We hold that the strip

20  off of a wholly unsecured lien on a debtor's principal residence

21  ... is not contingent on his receipt of a Chapter 13 discharge").

22  Further, as noted by the court in In Re Okosisi,

23       "[a]t the successful completion of all payments in a
         no-discharge chapter 13 case, no order discharging the
24       debtor will be entered because the debtor is not
         eligible for a discharge. . . [I]n this situation, the
25       proper result is for the court to close the case
         without discharge. . . . Because the no-discharge case
26       is closed without discharge, rather than dismissed, the
         code sections that reverse any lien avoidance actions
27       contained within a chapter 13 plan upon conversion or
         dismissal are not implicated, and, thus, do not act to
28       prevent the permanence of the lien avoidance . . . .

23

1  Once a debtor successfully complete all plan payments
2  required by a chapter 13 plan, the provisions of the
   plan become permanent, and the lien avoidance is,
3  similarly permanent."

4  451 B.R. at 99-100 (noting that although, per In re Leavitt,

5  171 F.3d 1219, 1223 (9th Cir. 1999), a Chapter 13 case can only

6  end in one of three ways: conversion, dismissal, or discharge.

7  BAPCPA's addition of § 1328(f) "opened up the possibility of a

8  fourth option, the completion of all plan payments without a

9  discharge"); contra In re Victorio, 454 B.R. 759, 761 (Bankr.

10 S.D. Cal. 2011) ("[D]ebtors in a Chapter 20 case cannot obtain a

11 'permanent' avoidance of a wholly unsecured junior lien on their

12 principal residence unless they pay the claim amount in full, or

13 obtain a discharge.").

14     Conversely, if a Chapter 13 case is dismissed or converted

15 to a Chapter 7 prior to the successful completion of all plan

16 payments, actions taken to avoid a lien are undone, and a junior

17 lien holder's in rem rights would remain intact.

18     Importantly, in order for a Chapter 13 plan to be confirmed

19 in this scenario, the plan must otherwise comply with all other

20 requirements for plan confirmation set forth in the Code. See

21 e.g. In re Tran, 431 B.R. at 235 (permitting Chapter 20 lien

22 stripping but requiring plan that otherwise "meets all of the

23 statutory requirements"); In re Hill, 440 B.R. at 182 (permitting

24 Chapter 20 lien stripping but requiring plan that "otherwise

25 complies with the requirements of the Code").  "Once the lien is

26 so avoided, the unsecured claim that is represented by this

27 nonrecourse debt becomes an unsecured claim in the bankruptcy."

28 ///

In re Okosisi, 451 B.R. at 96.  As the holder of an unsecured
claim, the creditor whose lien was stripped "need only be paid
its pro-rata share of Debtors' disposable income calculated under
707(b) and its pro-rata share of any equity in Debtors' assets."
In re Hill, 440 B.R. at 183.

In Appellees' case, Appellant's lien will be permanently
stripped upon plan completion and the case will end in
administrative closing.  Assuming Appellees complete their
Chapter 13 plan, Appellant will receive a pro-rata distribution
of Appellees' disposable income——which here, is zero——and a
pro rata distribution of any assets remaining after competition
of payments to creditors holding allowed secured claims and
priority unsecured creditors.  In the event that Appellees do not
make all required Chapter 13 plan payments, Appellees' Chapter 13
plan would be converted to a Chapter 7 or dismissed.  Appellant
would then have the option to exercise its remaining in rem
rights against the subject property recognized by state law.

Based on the foregoing, the Court affirms the Bankruptcy
Court's holding that Appellees could remove Appellant's lien
without obtaining a Chapter 13 discharge.

**B.   Treatment of Appellant's Claim Under the Chapter 13
       Plan**

Appellant's second argument on appeal is that the Bankruptcy
Court erred in confirming Appellees' Chapter 13 plan because
Appellant's claim was not "treated" in the proposed Chapter 13
plan.  (Appellant's Opening Brief, ECF No. 17 at 21.)
///

Appellant's argument is not the model of clarity.  To paraphrase, Appellant argues that the Bankruptcy Court erred in confirming Appellees' Chapter 13 plan because new consideration was not provided as part of the contract which arises out of Appellees' Chapter 13 plan.

Specifically, Appellant challenges the Bankruptcy Court's confirmation of Appellees' Chapter 13 plan arguing that Appellees did not provide "new consideration" to them as an unsecured creditor. (Appellant's Opening Brief, ECF No. 17 at 21, 23.)  The Bankruptcy Court likened Appellees' Chapter 13 plan to a contract between Appellees and creditors, thus, Appellant is now demanding "new consideration" to support this "contract."

First, Appellant cites to no authority requiring new consideration to be provided to an unsecured creditor in order for a bankruptcy court to confirm a debtor's proposed Chapter 13 plan.  Further, the Chapter 13 plan is authorized by the Bankruptcy Code, which does not require the concept of "new consideration" in order for a bankruptcy court to approve Appellees' Chapter 13 plan.  Thus, Appellant's reliance on a California statute requiring consideration for a contract to be valid is misplaced.  The Bankruptcy Code governs the contents and confirmation of Appellees' Chapter 13 plan, not California statutory or common law governing contracts.  Further, the Bankruptcy Court found that Appellees' Chapter 13 plan was proposed in good faith and that the contents of the Chapter 13 plan complied with § 1322.

///

///

26

1    Appellant argues that Appellees' Chapter 13 plan should not

2  have been confirmed because it does not meet one the requirements

3  for plan confirmation——§ 1325(a)(4).  Appellant argues that the

4  consideration required to support the contract can be found in

5  11 U.S.C. § 1325(a)(4) and that the court improperly found that

6  Appellees' plan complied with § 1325(a)(4).

7    Section 1325 of the Bankruptcy Code sets out requirements a

8  debtor must meet before the Bankruptcy Court can confirm a

9  debtor's Chapter 13 plan.  At issue here is § 1325(a)(4), which

10 provides:

11       (a) Except as provided in subsection (b), the court
         shall confirm a plan if ...
12
         (4) the value, as of the effective date of the plan, of
13       property to be distributed under the plan on account of
         each allowed unsecured claim is not less than the
14       amount that would be paid on such claim if the estate
         of the debtor were liquidated under chapter 7 of this
15       title on such date.

16 11 U.S.C. § 1325(a)(4).  This provision, known as the "best

17 interest of creditors test," ensures that a Chapter 13 plan

18 provides unsecured creditors with at least as much return as they

19 would receive in a Chapter 7 liquidation.  The application of the

20 "best interests test" rests with the discretion of the Bankruptcy

21 Court.  8 Collier on Bankruptcy, (15th Ed. Revised), ¶ 1325.05,

22 at 1325-17 (internal citations omitted).  As the determination of

23 whether a debtor's plan complies with § 1325(a)(4) is a factual

24 finding, the Court reviews the Bankruptcy Court's determination

25 under the clearly erroneous standard.  See Murray, 131 F.3d at

26 792)(factual determinations are assessed pursuant to a "clearly

27 erroneous" standard).

28 ///

                                    27

1    Appellant contends that Appellees' Chapter 13 plan fails

2    under the liquidation analysis provided by § 1325(a)(4), and

3    thus, does not provide "consideration" to support the new

4    contract proposed by Appellees' Chapter 13 plan. (Appellant's

5    Opening Brief, ECF No. 17 at 23-24.)   Specifically, Appellant

6    contends that in the event of a Chapter 7 liquidation at this

7    juncture, Appellee would owe Appellant the full amount of

8    Appellant's outstanding claim of $53,591.82.   Accordingly,

9    Appellant contends Appellees' plan fails to meet § 1325(a)(4)

10   because the Chapter 13 plan anticipates a 0.00% payment to

11   unsecured creditors like Appellants.   (Id.)

12        To the contrary, the Bankruptcy Court specifically found

13   that Appellees' Chapter 13 plan complied with the plan

14   confirmation requirements set forth in § 1325(a) and (b).  (ER at

15   194 (emphasis added).)   The Court agrees with the Bankruptcy

16   Court's finding that Appellees' Chapter 13 plan met the

17   § 1325(a)(4) requirement.   Specifically, if Appellees filed for

18   Chapter 7 liquidation, BOA and Appellant would retain their

19   in rem rights against the subject property which would allow them

20   to foreclose on Appellant's property.   BOA's senior lien for

21   $275,681.00 would fully exhaust the value of the subject

22   property.   Thus, in a hypothetical liquidation, the value of

23   Appellant's junior lien and in rem rights is $0.00.

24   Accordingly, the Court finds the Bankruptcy Court's finding that

25   § 1325(a)(4) was not clearly erroneous.

26   ///

27   ///

28   ///

28

1    As to Appellant's claim that it is not treated at all in
2    Appellees' Chapter 13 plan, that argument is disingenuous.
3    Appellant holds an unsecured allowed claim and its claim is
4    subject to modification of its rights under § 1322(b)(2).  As the
5    holder of an unsecured claim under § 1325(b)(4), Appellant need
6    only be paid its pro rata share of Appellees' disposable income
7    calculated under § 707(b), along with its pro rata share of any
8    equity in Appellees' assets.  Since § 1322(a)(3) requires that
9    claims within the same class be treated in the same manner,
10   Appellant is "entitled to be paid whatever [is paid generally to
11   unsecured creditors], the prior chapter 7 discharge
12   notwithstanding."  In re Gounder, 266 B.R. 879, 881 (Bankr. E.D.
13   Cal. 2001).

14        Thus, to the extent that Appellant argues that its claim is
15   not "treated" in Appellees' Chapter 13 plan, the Court finds its
16   position untenable.  Appellees' Chapter 13 plan provides for
17   Appellant's claim and treats Appellant as a creditor holding an
18   allowed unsecured claim.  Accordingly, the Court affirms the
19   Bankruptcy Court's decision to confirm Appellees' Chapter 13
20   Plan.

21

22                           **CONCLUSION**

23

24        The Bankruptcy Court did not err in confirming Appellees'
25   Chapter 13 plan and approving the removal of Appellant's junior
26   lien, despite the fact Appellees were ineligible for discharge
27   pursuant to § 1328(f)(1).
28   ///

Section 1328(f)(1) only prohibits a Chapter 20 debtor from obtaining a discharge, not from removing a wholly unsecured, junior lien from a debtor's primary residence.  Last, the Bankruptcy Court did not err in confirming Appellees' Chapter 13 plan despite Appellant's treatment as an unsecured creditor.  As previously noted, Appellant was classified as holder of an unsecured allowed claim pursuant to § 506(a)(1) and will receive a pro rata distribution of Appellees' available disposable income and in any remaining equity in Appellees' available assets at the end of Appellees' plan.  The Court also agrees with the Bankruptcy Court that Appellees' Chapter 13 case with end upon plan completion.  Accordingly, the Bankruptcy Court's decision is affirmed.  The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated: March 8, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE